IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZACHARY RICO, | § | |
| TDCJ No. 2173410, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:21-cv-399-S-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

A Dallas County jury convicted Petitioner Zachary Rico of murder and sentenced him to life imprisonment. *See* Dkt. No. 12-9 at 117; *State v. Rico*, F-1631352-H (Crim. Dist. Court. #1, Dallas Cnty. Dec. 15, 2017). His conviction and sentence were affirmed on direct appeal, and the Texas Court of Criminal Appeals (CCA) refused his petition for discretionary review. *Rico v. State*, No. 05-17-01462-CR, 2018 WL 6629565 (Tex. App. – Dallas, Oct. 31, 2017, pet. ref'd); Dkt. No. 1 at 2-3.

Rico then filed a state habeas application. *See* Dkt. Nos. 12-20, 12-21, 12-22. The habeas trial court issued two sets of substantially similar findings of fact and conclusions of law recommending that Rico's petition be denied. *See* Dkt. No. 12-22 at 114-146. Because the findings and conclusions do not differ as to substance, the undersigned references only the second set throughout this recommendation.

The CCA denied Rico's application "on [the] findings of the trial court without hearing and on the court's independent review of the record." *Ex parte Rico*, WR-92,312-01 (Tex. Crim. App. Feb. 24, 2021); Dkt. No. 12-17.

Rico then filed a petition for federal habeas relief under 28 U.S.C. § 2254, along with a supporting memorandum. *See* Dkt. Nos. 1 & 5.

The Court referred Rico's federal habeas petition to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) under a standing order of reference from United States District Judge Karen Gren Scholer. The State responded to the petition. Rico did not file a reply.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Rico's federal habeas petition.

## Legal Standard

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it

reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination…In other words, [habeas relief is inappropriate when], even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion

'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

In applying this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Rico raises one ground for federal habeas relief: his trial counsel was ineffective for failing to investigate or introduce breathalyzer results during the punishment phase of the trial showing that he did not drink alcohol while released on bail. Dkt. No. 1 at 5.

### A. The scope of 2254(d) deference in this case

In this case, the habeas trial court issued lengthy findings and conclusions of law. *See* Dkt. No. 12-22 at 130-146. An initial issue is whether this Court – in analyzing whether Rico has cleared 2254(d)'s relitigation bar – is limited to considering the reasoning of the habeas trial court under *Wilson v. Sellers*, 138 S. Ct.

1188 (2018), or, whether under *Richter*, the Court can rely on any argument or theory the CCA could have relied upon to deny relief.

That issue might matter for a couple of reasons here. First, because the habeas trial court only addressed the prejudice prong of the *Strickland* analysis, if this Court's AEDPA deference only extends to the habeas trial court's reasoning, this Court would have to examine *Strickland's* deficient performance prong *de novo* if it found the no-prejudice determination unreasonable under Section 2254(d). *See, e.g., Porter v. McCollum*, 558 U.S. 30, 39 (2009) (*de novo* review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state court had failed to address this prong of the *Strickland* analysis).

And second, as to prejudice, if deference only extends to the reasoning of the habeas trial court, this Court's Section 2254(d) analysis would be bound by that court's analysis of the issue.

In *Wilson*, the Supreme Court determined that, when the state court denies a habeas petition without reasons, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale," "presume that the unexplained decision adopted the same reasoning," and "review[] the specific reasons given by the state court and defer[] to those reasons if they are reasonable." 138 S. Ct. at 1192.

But the State can rebut this presumption "by showing that the unexplained affirmance relied on or most likely did rely on different grounds than the lower state

court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

Courts have struggled with how *Wilson* meshes with the Supreme Court's earlier decision in *Richter* – which held that, where "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief," *Richter*, 562 U.S. at 98 – and the language of the AEDPA, which seems to require deference to the state court's ultimate decision as opposed to its written reasoning, *see* 28 U.S.C. § 2254(d).

Put differently, following *Wilson*, the question is whether "AEDPA deference extends only to the reasons given by a state court (when they exist), or instead applies to other reasons that support a state court's decision." *Thompson v. Skipper*, 981 F.3d 476, 480, n.1 (6th Cir. 2020) (comparing, *Ford v. Peery*, 976 F.3d 1032, 104 (9th Cir. 2020) ("[I]f a state court articulates its reasoning, it is only that reasoning that receives deference."), and *Winfield v. Dorethy*, 956 F.3d 442, 454 (7th Cir. 2020) ("Having found the state court's specific reasons' for denying relief, the next question is whether that explanation was reasonable thereby requiring our deference." (quoting *Wilson*, 138 S. Ct. at 1192)), with *Sheppard v. Davis*, 967 F.3d 458, 467 n.5 (5th Cir. 2020) ("We observe, without deciding, that it is far from certain that *Wilson* overruled *sub silentio* the position – held by most of the courts of appeals – that a habeas court must defer to a state court's ultimate ruling than to its specific *reasoning*."); emphasis in original)).

-10-

For its part, the State argues that *Wilson* did not "abrogate the ultimate-conclusion-not-reasoning methodology found in the AEDPA." Dkt. No. 11 at 18. But, even if it did, the State continues, *Wilson*'s reasoning would not apply here because the CCA – by hedging its adoption of the trial court's findings with its own independent review of the record – rebutted the *Wilson* presumption that it relied solely on the lower court reasoning. *See id.* at 19. And the State also argues that Rico's case "is not one where this Court would substitute its 'thought as to more supportive reasoning' for the state-court decision, *Wilson*, 138 S.Ct. at 1197, but one where this Court simply would conduct an AEDPA analysis – as it is required to do – by surveying the clearly established Supreme Court precedent to determine whether the CCA's decision was unreasonable." *Id.* at 20.

The undersigned agrees with the State's second argument and therefore does not address the others.

*Wilson* established a presumption, not a hard rule. The State can rebut this presumption "by showing that the unexplained [decision] relied or most likely did rely on different grounds than the lower state court's decision." *Wilson*, 138 S. Ct. at 1192.

Here, the CCA did not limit its denial to the reasons offered by the habeas trial court – it also denied the petition, without reasons, based on its own independent review of the record. *See* Dkt. No. 12-1 7. There is no reason to presume that the CCA relied only on the lower court's reasoning when it explicitly said that it did not.

And so the *Wilson* presumption is inapplicable – although, as explained below, even if the presumption applies and this Court's AEDPA deference goes only so far

as the habeas trial court's reasoning, that reasoning did not run afoul of Section 2254(d), so the end result is the same. *See*, *e.g.*, *Gonzalez v. Lumpkin*, Civil Action No. 1:20-cv-190, 2022 WL 509038, at *7 (S.D. Tex. Jan. 28, 2022) (asking – in context of CCA denial on the basis of the trial court's findings as well as its own independent review of the record – not whether deference should be given to the habeas trial court's articulated reasoning, but rather whether any arguments and theories supported the CCA's denial of the petition on its own independent review).

And, because the CCA did not explain why it denied the petition on its own independent review, the Court must "gather the arguments and theories that could support the state court's ultimate decision and ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court precedent." *Thomas v. Vannoy*, 898 F.3d 561, 568-69 (5th Cir. 2018) (cleaned up); *see also Gonzalez*, 2022 WL 509038, at *7.

## B. Ineffective Assistance of Counsel

Having established the scope of AEDPA deference, the undersigned turns to the *Strickland* analysis under the AEDPA's deferential standard of review.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

-12-

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."

-13-

*Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-

probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by

*Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

### i.    *Deficient Performance*

Addressing the deficiency prong first, Rico claims that his trial counsel was ineffective during sentencing for failing to introduce favorable and available

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

breathalyzer test results showing that he did not drink alcohol while released on bail. Dkt. No. 1 at 5. More specifically, Rico – who had been drinking at the time of the murder – claims that his post-offense drinking was a critical issue at sentencing and that the favorable breathalyzer evidence would have corroborated testimony from his parents and his step-mother that, while on bail, he passed three-times-daily breath tests and biannual drug tests and had not had any post-bail drinking issues. *See*, *e.g.*, Dkt. No. 5 at 19, 20-21.

Rico also contends that this evidence would have discredited testimony from a State witness – Naomi Martinez – who allegedly saw Rico holding a beer at a club while released on bail and also would have allowed him to counter part of the State's closing argument that "'[t]here was no hard proof that he had any drug testing in the last year, specifically from the date he was seen' at the club." Dkt. No. 5 at 23 (citing pertinent portion of State's closing argument).

But the breathalyzer evidence was not without risk. Rico submitted two months' worth of test results – from February 7, 2017, to April 7, 2017 – to the state habeas court that he argued his trial counsel should have introduced at the punishment phase of his trial. *See* Dkt. No. 12-22 at 136 (findings of fact and conclusions of law of habeas trial court). While these results showed no failed tests, they did show that Rico skipped seven tests and submitted eight tests outside of the required time window. *See id.* at 137.

This evidence, then, was counter to the testimony of Rico's parents and step-mother, who implied that Rico complied with all of the bail requirements. *Id.* at 143.

It was also counter to Rico's argument at sentencing that he had the capability to "perform what's required of him by law because he's done it." *Id.* at 144.

And, as the habeas trial court pointed out, the breathalyzer evidence did not necessarily exonerate Rico from the implication (if not outright allegation) that he had been drinking a beer at a bar while on bail. While the exact date of the potential beer-drinking incident was not known, evidence before the state habeas court shows that it was sometime between March 1, 2017, and March 17, 2017. *See id.* And Rico missed a breathalyzer test on March 16, 2017, that was required to occur between 5:00 a.m. and 8:00 a.m., instead submitting the result 64 minutes outside of the window at 9:04 a.m. *See id.*

The upshot of all of this is that the jury might have considered the breathalyzer evidence more aggravating than mitigating. And so the CCA could have reasonably concluded that Rico's trial counsel made a reasonable strategic decision not to present the breathalyzer evidence and rejected his IAC claim accordingly. *See, e.g., Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) ("A] tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance."); *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)) ("[A]conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."); *see also Bradley v. Shaw*, CIV. A. No. 2:18-cv-196-TBM-LGI, 2022 WL 908932, at *7

(S.D. Miss. Mar. 28, 2022) ("A strategic decision not to present 'double-edged' evidence 'is objectively reasonable, and therefore does not amount to deficient performance.'"; (citations omitted)).

To show deficient performance, Rico tries to liken his case to *Hart v. Gomez*, 174 F.3d 1067, 1067-71 (9th Cir. 1999). In that case, the victim testified that the defendant molested her, but only during visits to a particular ranch when they were not accompanied by another adult. *See id.* at 1068. The defendant's girlfriend testified that she was with the defendant and his daughter on all trips to the ranch in the pertinent timeframe. And she also possessed corroborative evidence in support of her testimony, "including calendar entries and receipts from a motel and a grocery store near the [ranch] that verified her claim." *Id.* at 1070. But the defendant's attorney failed to introduce the corroborative evidence, relying only on the girlfriend's testimony. *See id.* at 1068. The Ninth Circuit found the failure to introduce corroborating evidence to be unreasonable and prejudicial in violation of *Strickland*.

But there is no indication that the corroborative evidence in *Hart* was double-edged or potentially aggravating like the breathalyzer evidence in Rico's case. Because there was no strategic reason for omitting the corroborating evidence there like there was here, *Hart* is inapposite.

In sum, the CCA did not unreasonably apply *Strickland* in rejecting Rico's IAC claim that his trial counsel should have introduced his breathalyzer results because there was a strategic reason apparent from the state court record for not doing so.

### ii.    *Prejudice*

But even if he could show deficient performance, Rico fails to show prejudice. And this is true even if this Court were limited – under *Wilson* – to applying AEDPA deference to the specific reasoning of the habeas trial court on this issue.

Under AEDPA review, this Court does not ask whether Rico can demonstrate *Strickland* prejudice in the first instance but rather decides only "whether the [CCA's] judgment that he could not demonstrate prejudice was unreasonable in light of clearly established Supreme Court precedent." *Loden v. McCarty*, 778 F.3d 484, 499 (5th Cir. 2015). "To satisfy the prejudice prong of the *Strickland* test in the context of a non-capital sentencing proceeding, a defendant must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh." *United States v. Seyfert*, 67 F.3d 544, 548-49 (5th Cir. 1995) (citing *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995); *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)).

Here, the habeas trial court gave specific reasons for finding that Rico could not show prejudice.

> 53.    In this case, the State's evidence showed multiple instances where [Rico] attended parties, brandished his weapon, and threatened others, with little or no provocation – similar to evidence presented at trial regarding the subject murder. Despite apparently having a solid and healthy childhood, with opportunities and loving parents, [Rico] nevertheless committed murder. The aggravating evidence in this case was strong.

> 54.    While [Rico] complains that the breathalyzer results were not admitted to show that he had not been drinking while awaiting trial, and that he was not drinking when he was seen at a bar by Naomi Martinez, the breathalyzer results would not have

substantially tipped the scales in his favor. This is true because (1) his parents and step-mother testified that he had not had any problems with drinking since the murder, thus the breathalyzer records would have been cumulative of their testimony; and (2) Naomi Martinez admitted that she never saw Applicant drink the beer she claimed he was holding.

55.   Moreover, admitting the breathalyzer results could have opened up [Rico's] punishment witnesses to damaging cross-examination regarding his failure to complete seven of the required tests in a mere two-month period. First, [Rico's] parents and step-mother presented the impression that [Rico] had complied with all the bond requirements, and from this testimony, trial counsel was able to argue that [Rico] has the capability to "perform what's required of him by law because he's done it." Had the breathalyzer results been admitted, the State could have pointed to [Rico's] numerous failures to comply with testing.

56.   Second, [Rico] has failed to show that admission of the records would have exonerated him from the State's suggestion that [Rico] had been drinking when seen at a bar by Naomi Martinez. The evidence shows that this incident occurred sometime between March 1, 2017 and March 17, 2017, when [Rico's] counsel e-mailed [Rico's] parents about Naomi Martinez's report to the prosecutor. On March 16, 2017, however, [Rico] missed a breathalyzer test that was required to occur between 5:00 a.m. and 8:00 a.m.

57.   Thus, the State could have argued that the bar incident Naomi Martinez reported occurred on March 15, 2017, and that is why [Rico] skipped his early morning breathalyzer test. At the very least, admitting these records would have hampered trial counsel's ability to argue, as he did, that the jury should not believe Naomi Martinez because "he was being drug tested three times a day, seven days a week."

58.   In sum, [Rico] has failed to demonstrate a reasonable probability that had trial counsel admitted the breathalyzer results, the outcome of the punishment hearing would have been different.

Dkt. No. 12-22 at 143-144.

Rico claims that most of the habeas trial court's conclusions in support of the no-prejudice determination "w[ere] based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Dkt. No. 5 at 16.

Two provisions of AEDPA are pertinent to this analysis: Sections 2254(d)(2) and 2254(e)(1). The Fifth Circuit has held that Section 2254(e)(1) "pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003)).

> Whereas § 2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues. For example, a district court may find by clear and convincing evidence that the state court erred with respect to a particular finding of fact, thus rebutting the presumption of correctness with respect to that fact. *See* § 2254(e)(1). It is then a separate question whether the state court's determination of facts was unreasonable in light of the evidence presented in the state court proceeding. *See* § 2254(d)(2). Thus, it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision in the case was reasonable under § 2254(d)(2).

*Fields v. Thaler*, 588 F.3d 270, 279 (5th Cir. 2009) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 951 n. 17 (5th Cir. 2001)).

"Thus, for [Rico] to succeed in showing that the state court's determination of facts was unreasonable, he will have to do more than simply show the erroneous nature of one individual fact-finding." *Hoffman v. Cain*, 752 F.3d 430, 442 (5th Cir. 2014).

-22-

As for the factual determinations to which Rico takes issue, he first argues that the habeas trial court's conclusion that the breathalyzer evidence would have been cumulative of other witness testimony that "Rico had not had any problems with drinking since the murder" was incorrect because the evidence was actually corroborative – not cumulative. Dkt. No. 5 at 16-17. He notes that objective evidence like the breathalyzer results is not the same as interested-witness testimony and references authority for that proposition. *See*, *e.g.*, *Ex parte Moore*, 548 S.W.3d 552, 571-72 (Tex. Crim. App. 2018), *cert. granted, judgment rev'd sub nom. Moore v. Tex.*, 139 S. Ct. 666 (2019) ("The habeas court also referred to Applicant being easily led, but as we explained above, those conclusions, from interested witnesses, are at odds with more objective evidence showing Applicant's ability to stand up for himself and to influence others."); *Ovalle v. State*, 13 S.W.3d 774, 784 (Tex. Crim. App. 2000) ("Second, given the evidence, Mrs. Ovalle's testimony was comparatively weak. She was the only witness who testified that the appellant asked for an attorney, and as his mother, she was a very interested witness at that."); *United States v. Vickers*, 442 F. App'x 79, 84 (5th Cir. 2011) ("The evidence of the injuries is not cumulative evidence, but corroborative evidence – the existence of the injuries, particularly the photos of said injuries, is being used to corroborate…testimony…that [the victim] was physically struck by [the defendant]. Such corroboration was beneficial, if not necessary, in a case that was largely decided on the credibility of the prosecution's witnesses versus that of the defendant's witnesses.").

But, even assuming that Rico could meet his burden under Section 2254(e)(1) of rebutting – by clear and convincing evidence – the habeas trial court's finding that the breathalyzer evidence was not cumulative, Rico has not shown that this one incorrect finding renders the entirety of the habeas trial court's findings unreasonable. In other words – given the other factual determinations supporting the no-prejudice finding that the undersigned addresses below – "this individual fact was not so important as to undermine the state court's fact-finding on the whole." *Hoffman*, 752 F.3d at 443; *see also Will*, 978 F.3d at 942 (rejecting habeas relief based on Section 2254(d)(2) where "even if the CCA had gotten [the] factual determination right, its conclusion wouldn't have changed"); *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) ("Making matters more difficult, it is not sufficient to show the state court's decision merely *included* an unreasonable factual determination. Instead, by its terms § 2254(d)(2) only empowers federal courts to grant relief if the state court's decision was "*based on* an unreasonable determination of the facts."; (emphasis in original); citation omitted)).

Turing to the other factual determinations supporting the no-prejudice finding, the habeas trial court also found that the evidence would not have "substantially tipped the scales" because Naomi Martinez admitted that she never saw Rico drink the beer that she claimed he was holding. Dkt. No. 12-22 at 143.

In response, Rico argues that the testimony clearly implied that he was drinking; he points specifically to the State's closing argument based on Martinez's

testimony that he is "still out … drinking and having a good time." Dkt. No. 5 at 17-18 (citing Dkt. No. 12-14 at 8).

But Rico fails to show that this failure-to-tip-the-scales factual finding was incorrect under Section 2254(e)(1). Importantly, as discussed below, the breathalyzer evidence did not conclusively rebut any implication that Rico had been drinking while on bail, and, for that reason, the state court could have reasonably found that it would not have been conclusive on the issue of whether Rico was drinking in violation of his bail conditions.

Next, regarding the habeas trial court's finding that "admitting the breathalyzer results could have opened up [Rico's] punishment witnesses to damaging cross-examination regarding his failure to complete seven of the required tests in a mere two-month period," Rico admits that the breathalyzer evidence might have opened the door to cross-examination of his witnesses. Dkt. No. 5 at 18. But he contends that the potential cross-examination damage was "minimal" because he did not skip the tests entirely, instead attempting to rectify the situation by submitting untimely samples. *Id.*

Rico has failed to show that this factual determination was incorrect under Section 2254(e)(1). The habeas trial court correctly noted that the potential cross-examination would undercut the impression that Rico had complied with all the bail requirements and would also hamper his ability to argue that he had the capacity to be law abiding – which was an argument Rico's counsel made in closing argument. *See* Dkt. No. 12-14 at 15 ("And you know that he can perform what's required of him

by law because he's done it. He was under conditions of bond…[a]nd he was subject to alcohol testing 3 times a day. And that went on for more than 365 days.")

While Rico believes the damage would have been "minimal," he does not convincingly argue why that would be the case given his attempt to portray himself as complying with the bail requirements.

Next, as to the finding that the breathalyzer evidence was not exonerative, Rico argues that the odds of him drinking on March 15th and then waiting to test outside the relevant window on March 16th to pass the test are "extraordinarily slim." Dkt. No. 5 at 19. He notes that, although he had a late test result on the morning of March 16, 2017, he took and passed the breath test at 9:04 that morning – 64 minutes outside of the window. *See id.*

But Rico does not explain why that would make the odds of him drinking on March 15, 2017 "extraordinarily slim." Dkt. No. 5. The additional 64 minutes might have allowed him the time to sober up before taking a breathalyzer.

At bottom, Rico fails to show with clear and convincing evidence that this factual finding was wrong under Section 2254(e)(1).

And, finally, Rico does not contest the habeas trial court's finding that there was "strong" aggravating evidence against him. This finding is important because, in assessing prejudice in the non-capital sentencing context, the Court looks to, among other things, pertinent aggravating and mitigating factors. *See, e.g., Barto v. TDCJ-CID*, CIVIL ACTION NO. 4:16cv486 CONSOLIDATED WITH NOS. 4:16cv487, 4:16cv488, 2019 WL 252 1538, at *15 (E.D. Tex. Apr. 22, 2019), *rec. accepted*, 2019

WL 2515020 (E.D. Tex. June 18, 2019) (citing *Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993)).

And this aggravating evidence centered on Rico's aggressive and threatening behavior and not necessarily his drinking. *See*, *e.g.*, Dkt. No. 12-22 at 132 (witness testified as to Rico's aggressive and threatening behavior but did not know whether he had been drinking); *Id.* at 132-33 (witness testified as to incident displaying Rico's aggressive and threatening behavior but did not witness Rico consuming any alcohol and opined that Rico was not drunk "at all"). This evidence, then, would not necessarily be undermined by favorable breathalyzer results while on bail. Rico – while arguing that his drinking was a secondary one alongside it – admits that his "prior aggressive and threatening behavior may have been the primary punishment issue." Dkt. No. 5 at 22-23.

In sum, Rico fails to show the CCA's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Even assuming that Rico could meet his burden under Section 2254(e)(1) of showing that the cumulative-as-opposed-to-corroborative finding was wrong, this lone error does not render the entire "determination of the facts" unreasonable given the myriad of other factual findings (none of which have been shown to be incorrect under Section 2254(e)(1) that the state court made in support of the no-prejudice finding that could have supported it independently, specifically: that the aggravating evidence against Rico was strong, that the breathalyzer evidence was potentially aggravating (or at best double-edged), that the breathalyzer evidence was not

exonerative, and that the breathalyzer evidence would not have "tipped the scales" in Rico's favor.

And, on the basis of that reasonable determination of the facts, the CCA could have reasonably concluded that Rico failed to show *Strickland* prejudice, that is, that his sentence would have been significantly less harsh with the breathalyzer evidence.

## Recommendation

The Court should deny Rico's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: January 18, 2023

-28-

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE